**UNITED STATES of America,**

v.

**Juan J. BERNAL Sanchez, Defendant.**

**No. Crim.01–658(HL).**

United States District Court,
D. Puerto Rico.

Nov. 13, 2001.

Jose R. Aguayo, Hato Rey, PR, for Juan J. Bernal–Sanchez.

Daniel J. Vaccaro, U.S. Attorney's Office, Criminal Division, San Juan, PR, Pretrial Services, U.S. Pretrial Services, San Juan, PR, U.S. Probation, U.S. Probation Office, for U.S.

**ORDER**

LAFFITTE, Chief Judge.

On September 20, 2001, Juan J. Bernal, a practicing attorney, was charged with conspiracy to possess in excess of five kilograms of cocaine and not less than fifty grams of cocaine base (crack cocaine). A minimum term of ten years is prescribed for this offense, 21 U.S.C. § 846. Defendant is further charged with the possession of firearms during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1) and (2). Because the weapons described in the indictment are, inter alia, AK–15 and AK–47 assault rifles, defendant faces a mandatory minimum of ten years to be served consecutively with count one.

Following a detention hearing held on September 28, 2001, Magistrate Judge Castellanos entered a detention order finding that no conditions of release could reasonably assure the appearance of defendant at Court proceedings and the safety of the community. Dkt. 9. In a carefully and well reasoned detention order, Magistrate Judge Castellanos supplemented his findings as to defendant's dangerousness to the community. Defendant sought review from the detention order, and this Court held a de novo hearing on October 31st.

The evidence presented at the de novo hearing mirrored that evidence presented at the initial hearing. Attorneys Sara Torres Peralta, a close friend of defendant's family, and Felipe Benicio Sánchez, his uncle, both offered essentially the same testimony they had given before Magistrate Castellanos.[1] They reiterated their opinions on defendant's good character, reputation in the community and professional circles, his stable marriage, and close ties to the community. Furthermore, they expressed their belief that defendant is not prone to violent behavior or likely to flee the jurisdiction, nor do they believe him to be a danger to the community. They both are willing and able to secure with their assets a high bail to prevent the risk of flight and to ensure the safety of the community.[2]

The Court also heard the testimony of attorneys Juan Tomás Peñagarícano, José Romo Matienzo, and a neighbor. The Court also examined the affidavits of twenty-one attorneys who are acquainted with defendant vouching as to his good character. Exh. A. The Court has considered the transcript of the initial hearing and the evidence submitted therein. Had this Court considered solely the evidence presented before Magistrate Judge Castellanos, which was essentially the same evidence presented at the bail review hearing, the Court would have, without hesitation, denied bail.[3]

After perusing the record and considering the parties' briefs we find nothing that would warrant disturbing the district court's decision. We previously have stated that when a trial court accurately takes the measure of a case and articulates its rationale clearly and convincingly, 'an appellate court should refrain from writing at length to no other end than to hear its own words resonate,' citations omitted. *Cruz–Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d 381, 383 (1st Cir.2000).

Nevertheless, following the Magistrate Judge's additional findings ordering detention, defendant filed a supplemental proffer anent supervised release conditions. Dkt. 13. These proffers were reiterated at the de novo bail review hearing before this Court.[4] Among the conditions that defendant is willing to comply with include his being prohibited from practicing law, being placed under house arrest with a monitoring bracelet, and being subject to forfeiture of his bail should he violate his conditions of release. Attorneys Sara Torres Peralta and Felipe Benicio Sánchez and other witnesses testified that they are sufficiently solvent to post a high secured bail to assure compliance with supervised release conditions. It is because of this additional information that the Court grants bail.

The Court finds that the imposition of a high bail is reasonably necessary to ensure defendant's presence at trial and to ensure

---

1. Tr. at 26.

2. Specifically, when asked whether Defendant Bernal would be a danger to the community, one of the attorneys who testified, retorted: "I offered all my assets. I am willing to put them up on bail to guarantee he's in strict compliance with every legal requirement." Tr. 33.

3. The weight of the evidence against defendant appears strong. Bernal Sánchez was

recorded on the weapons transaction. Defendant faces serious consequences as a result of the current charges. The Court notes that the risk of flight increases in direct proportion to the length of the sentence.

4. In reviewing a Magistrate Judge's detention order the District Court may, as here, conduct a hearing to take and consider additional evidence. 28 U.S.C. § 3142(f).

the safety of the community. *Fassler v. United States,* 858 F.2d 1016, 1018, n. 4 (5th Cir.1988); *United States v. Szott,* 768 F.2d 159, 160 (7th Cir.1985). This high bail condition is an indispensable component of the conditions of release. Defendant's close relationship with the witnesses who are willing to provide bail for him should create a strong incentive for him to comply with the conditions of release. Further, defendant is not likely to place his close friends and relatives in the precarious position of having their valued properties forfeited. Consequently, the Court finds that the following conditions of release will reasonably assure the presence of defendant at trial and the safety of the community: [5]

1. Defendant shall remain at his residence 24 hours a day, and wear an electronic monitoring device under the Home Confinement program. Defendant shall pay the cost of the electronic monitoring device. Defendant may leave his residence for medical appointments with prior approval of Pretrial Services obtained at least 48 hours in advance. Any time defendant leaves his residence for a prearranged medical appointment, he shall do so in the custody of attorneys Sara Torres Peralta, José Aguayo, or Juan Tomás Peñagarícano.

2. Defendant shall execute a bail bond with solvent sureties, secured by real property or cash, in the amount of **Seven hundred thousand dollars ($700,000.00)** to secure compliance with his release conditions.

3. Defendant is prohibited from practicing law directly or indirectly.

4. There shall be only one telephone and one telephone line at defendant's residence. Defendant shall refrain from hav-

ing or using any cellular or wireless telephones. Defendant shall notify Pretrial Services immediately of telephone or electronic equipment failure.

5. Defendant shall execute a written consent that his residence shall be subject to unannounced searches by agents or officers of the Federal Bureau of Investigations, Drug Enforcement Administration, or Pretrial Services. Searches shall include the property and persons of individuals at defendant's residence.

6. Defendant shall refrain from possessing firearms, destructive devices or other dangerous weapons.

7. Defendant shall refrain from excessive use of alcohol, or any use of a narcotic drug controlled substance, as defined in the Controlled Substance Act, 21 U.S.C. § 802.

8. Defendant shall avoid contact with any potential witness who may testify concerning the offense.

9. Defendant shall not commit another local or federal crime and shall comply with the conditions of supervised release adopted by this Court.

10. Defendant shall also:
    a. Surrender any passport;
    b. Obtain no passport;
    c. Sign a document acknowledging that he is aware of the conditions of supervised release.

Defendant is put on notice that his supervised release is subject to the compliance with *all* the conditions of release set forth in this order.

**IT IS SO ORDERED.**

---

**5.** The court is mindful that defendant, a lawyer and former prosecutor, not only has allegedly violated his sacred oath to uphold the law but, in living a double life, may have crossed that bright line between counsel and consiglieri.